## Case No. 4,584.

EWER et al. v. COXE et al.

[4 Wash. C. C. 487.][1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1824.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

Mr. Ingraham, for plaintiffs.
Mr. Binney, for defendants.

WASHINGTON, Circuit Justice. The first question is, whether the plaintiffs, not having published a copy of the record of the title of the Pharmacopaeia, within the period, and for the length of time prescribed by the third section of the act of 1790, have entitled themselves to a copyright in that work? If they have not, it will be unnecessary to inquire whether "The American Dispensatory" is a copy or an illegal imitation of the former work, as I hold it to be beyond controversy, that, if the plaintiff has no copyright in the work of which he claims to be the owner, a court of equity will not grant him an injunction. This was formerly the doctrine of the English court of chancery, and still is as I conceive; notwithstanding lord Eldon has, in some instances, granted an injunction, and continued it to the hearing, under circumstances which rendered the title doubtful, if the plaintiff had possession under a colour of title. But surely if he has no title at all, or such a one as would enable him to recover at law, even that judge would, I presume, refuse an injunction. 1 Vern. 120; 6 Ves. 710, 707, 689, 699; 1 W. Bl. 105, 370; 2 Burrows, 661; 2 Eden, 327; Millar v. Taylor, 4 Burrows, 2303, and the cases there cited; Greirson v. Jackson, Ir. Term R. 304; 8 Ves. 505; 7 Ves. 1; 19 Ves. 447; Coop. Eq. Pl. 303.

In deciding this first question, it is material to settle, whether the requisitions of the third

and fourth sections of the act of the 31st of May 1790, c. 42, are merely directory, or whether their performance is essential to the vesting of a title to the copyright secured by the law? The first section enacts, in substance, that the author of any book, being a citizen of the United States, or resident therein, his executors or assigns, shall have the sole right and liberty of printing, publishing, and vending such book, for the term of fourteen years from the time of recording the title thereof in the clerk's office, as thereafter directed. And if, at the expiration of the said term, the author be living, and a citizen or resident as aforesaid, the same exclusive right shall be continued to him for the further term of fourteen years, provided he or they shall cause the title thereof to be a second time recorded, and published in the same manner as is hereafter directed; and that within six months before the expiration of the first term of fourteen years aforesaid. The second section enacts, that, if any person from and after the recording of the title, and publishing the same as aforesaid, and within the times limited and granted by the act, shall print, &c. any copy of such book without the consent of the author or proprietor first obtained in writing, &c. such offender shall forfeit every such copy, &c. to the author or proprietor, &c. and shall further pay fifty cents for every sheet, &c. one moiety thereof to the proprietor, who shall sue for the same, and the other to the United States. The third section declares, that no person shall be entitled to the benefit of this act, unless he shall, before publication, deposit a printed copy of the title of such book in the clerk's office of the district court, where the author or proprietor shall reside, which record the clerk is required to make; and then follows the form of the record. The section then proceeds as follows: "and such author or proprietor shall, within two months from the date thereof, cause a copy of the said record to be published in one or more of the newspapers printed in the United States, for the space of four weeks." The fourth section enacts, that the proprietor shall, within six months after the publishing of the said book, deliver to the secretary of state a copy of the same, to be preserved in his office.

It would seem from the phraseology of the first section of this act, as if the recording of the title a second time in the clerk's office, and the publication of the same as directed in the third section were made essential to the vesting of the copyright for a second term of fourteen years in the author or proprietor; and it is perfectly clear from the language of the second section, that the proprietor can acquire no title to the copyright for the term of the first fourteen years, unless he shall deposit in the clerk's office a printed copy of the title of the book; for the section declares that he shall not be entitled to the benefit of the act, unless he shall

make such deposit. But the condition upon which the proprietor is to be entitled to the benefit of the act, cannot, upon any grammatical construction, be extended to the requisition contained in the last sentence of this section, to publish a copy of the record of the title within the time and the period prescribed. It is entirely a new sentence, and is as much disconnected from the condition expressed in the preceding part of the section, as if it had been contained in the fourth section, to which there is clearly no condition annexed. If, then, the title of an author to a copyright, depended altogether upon this act, I should be of opinion that it would be complete, provided he had deposited a printed copy of the title of the book in the clerk's office, as directed by the second section, and that the publication of a copy of the same would only be necessary to enable him to sue for the forfeitures created by the second section. In this respect, the act corresponds, and was probably intended to correspond with St. 8 Anne, c. 19; which, and the construction given to it in the cases of Blackwell v. Harper, 2 Atk. 93; Beckford v. Hood, 7 Term R. 620, and some others, were no doubt within the view of the legislature which passed this act.

But a subsequent act was passed on the 29th of April 1802 (chapter 36), as a supplement to the before mentioned act, which declares, that every person who shall, after a certain day, claim to be the author or proprietor of any book, and shall thereafter seek to obtain a copyright of the same, agreeably to the rules prescribed by law, before he shall be entitled to the benefit of the act to which this is a supplement, he shall, in addition to the requisites enjoined in the third and fourth sections of the said act, give information, by causing the copy of the record, which, by said act, he is required to publish in one or more newspapers, to be inserted at full length in the title page, or in the page immediately following the title. With respect to this new and additional requisite, it is most obvious that the proprietor can acquire no title to the copyright, unless it is complied with. He must cause the copy to be inserted as directed, before he can be entitled to the benefit of the act of 1790. What was the benefit conferred by that act? The answer is apparent,—a copyright for a certain number of years, with all the privileges, advantages and remedies which that act confers upon the proprietor of such copyright. If he has not that right, he can have no remedy of any kind.

But the supplemental act declares that the person seeking to obtain this right, shall perform this new requisition, in addition to those prescribed in the third and fourth sections of the act of 1793, and that he must perform the whole, before he shall be entitled to the benefit of that act. It seems to me that the act will admit of no other construction. The meaning could not, I think, have been more clear and intelligible if the act had de-

clared that "the proprietor, before he should be entitled to the benefit of the act of 1790, should cause a copy of the record of the title to be published; and shall deliver a copy of the book to the secretary of state, as directed by the third and fourth sections of that act; and shall also cause a copy of the said record to be inserted at full length in the title page, &c." That this was the intention of the legislature is strongly illustrated by the second section of this act, which secures to persons who shall invent, &c. any historical or other print, the sole right of printing, publishing, &c. the same, provided he shall perform all the requisitions in relation thereto, as are directed in relation to maps, charts, and books, by the third and fourth sections of the act of 1790, and shall moreover cause the same entry to be engraved on such plate, with the name of the proprietor, and printed on every such print, as herein before required to be made on maps or charts. I am therefore of opinion that the plaintiffs are not entitled to a copyright in the Pharmacopoeia, of which they claim to be the proprietors, and that the injunction ought not to be granted.